# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| MITCHELL MARBURY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  4:16-cv-01152-AKK-JHE |
| | ) | |
| WARDEN DEWAYNE ESTES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 asserting violations of his civil rights during his incarceration at St. Clair Correctional Facility, in Springville, Alabama.[1] (Doc. 1).  The plaintiff names Warden DeWayne Estes and Correctional Officer Beverly Warren[2] as defendants.  (*Id.* at 1).  The plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.  (*Id.*, at 4, 6).  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. Procedural History

On August 3, 2016, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the complaint to each of the named defendants and directing the defendants to file a special report addressing the plaintiff's factual allegations.  (Doc. 6).  The court advised the defendants that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant

---

[1]  The plaintiff is now housed at Holman Correctional Facility in Atmore, Alabama.  (Doc. 12).

[2]  Defendant Warren has since retired as a correctional officer.  (Doc. 16 at 8).

to Rule 56 of the Federal Rules of Civil Procedure.  (*Id.*).  The court advised the plaintiff that, after he received a copy of the special report, he would have twenty-one days to file his initial disclosures pursuant to Rule 26(a)(1), Federal Rules of Civil Procedure.

On October 24, 2016, the defendants filed a special report, supplemented by affidavits and other evidence.  (Doc. 16).  On October 26, 2016, the court notified the parties that it would construe the special report as a motion for summary judgment and notified the plaintiff that he had twenty-one days to respond to the motion by filing affidavits or other material.  (Doc. 17).  The undersigned also advised the plaintiff of the consequences of any default or failure to comply with Fed. R. Civ. P. 56.  (*Id.*).  *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  On November 17, 2016, the plaintiff filed a response and evidence in support of his response.  (Docs. 20 and 21).

## II. Standard of Review

Because the court has construed the defendants' special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion.  Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact

become immaterial, and the moving party is entitled to judgment as a matter of law.  *See Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th

Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a
> prima facie case.  "In such a situation, there can be 'no genuine issue as to any
> material fact,' since a complete failure of proof concerning an essential element of
> the non-moving party's case necessarily renders all other facts immaterial."
> [citations omitted].  Thus, under such circumstances, the public official is entitled
> to judgment as a matter of law, because the plaintiff has failed to carry the burden
> of proof.  This rule facilitates the dismissal of factually unsupported claims prior to
> trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be

considered in opposition to summary judgment.  *See Caldwell v. Warden, FCI Talladega,* 748 F.3d

1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).

Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally

than it would pleadings drafted by lawyers.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  "*Pro se*

pleading are held to a less stringent standard than pleadings drafted by attorneys and will, therefore,

be liberally construed."  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

### III. Summary Judgment Facts[3]

In February 2016, the plaintiff requested defendant Warden Estes reassign him to "a more

sociable" living area with inmates closer to his age range.  (Doc. 1 at 6; doc. 21 at 23).  In that

request, the plaintiff stated he had seen more than fifteen stabbings that "appeared to be gang

related," and the lack of "morals" and "dignity" of these individuals were a threat to his health and

---

[3]  At this stage of the proceedings, the court must view the facts in the light most favorable
to the plaintiff and draw all reasonable inferences from those facts in his favor.  *Bradley v. Franklin
Collection Serv., Inc.,* 739 F.3d 606, 608 (11th Cir. 2014).

safety.[4]  (Doc. 1 at 6; doc. 21 at 23).  The plaintiff asserts he also asked defendant Beverly Warren, who was in charge of bed assignments, to move him.  (Doc. 1 at 7).  According to the plaintiff, Warren responded that if the plaintiff continued to make such requests, "she would personally see to it, that it be fixed, where she'll have a legal reason to deny plaintiff's requests."[5]  (*Id.*).  Warren also made comments to the plaintiff such as, "you don't enjoy hanging out with the thugs, afraid you might get shanked!" and "I got the keys to the city baby, you locked in."  (*Id.*).

According to Warren, while the plaintiff did make several requests to be moved to another dormitory, she told him that she did not have the authority to move him without the authorization of a Captain or Warden, and that he would have to speak with a Captain or Warden.  (Doc. 16-1 at 1-2).  Additionally, Warren remembers speaking to a captain after one of the plaintiff's requests, but has no personal knowledge as to whether that captain ever followed up with the plaintiff.  (*Id.*, at 2).

In March 2016, the plaintiff received two disciplinary reports for indecent exposure.  (Doc. 1 at 7-8; doc. 16-4 at 6-14).  According to the plaintiff, the disciplinary reports were in retaliation for his requests to Warren to have him moved.  (Doc. 1 at 8).  On the dates he received the disciplinary reports, Warren stated to him, "When you do dirt, dirt come back on you; what goes around comes around; suck it up chump!"  (*Id.*).  Warren denies that these disciplinary reports were without justification.[6]  (Doc. 16-1 at 2-3).

---

[4]  Warden Estes states that he has no knowledge of this request.  (Doc. 16-2 at 1).  He further states he referred all such requests he received to the population captain, who was non-party Captain Carla Graham during the relevant time period.  (*Id.*).

[5] Warren denies making these comments.  (Doc. 16-1 at 2).

[6] Due to procedural violations, the plaintiff was found not guilty on both of these charges.  (Doc. 16-4 at 9, 13).

The plaintiff continued to file complaints and requests to Warren and Warden Estes. (Doc. 21 at 25, 26). On April 4, 2016, he sent a letter to "Mrs. Carter" asking that defendant Warren comply with S.O.P. Policy of St. Clair Correctional Facility. (Doc. 21 at 26). The following day, the plaintiff sent a letter to defendant Estes, stating that the plaintiff had not gotten a response to his February 12, 2016, complaint. (*Id.*, at 25). Again, he complained about defendant Warren. (*Id.*). He also stated "I'm pleading with you to see to it that I'm moved to another block, due to too much violence I've witnesse[d] and the lack of security staff at St. Clair prison facility . . . . Therefore, I request to be removed from a[n] over-rated gang affiliated block to a program block or one where I can feel safe and secure." (*Id.*) (grammatical corrections added).

On April 18, 2016, the plaintiff requested Warren have Captain Carla Graham put him in lock-up until he could be transferred because a friend of the plaintiff's warned him another inmate wanted to hurt him. (Doc. 1 at 8). Warren responded "do you really think I'm [going to] act upon your request, after you've filed complaints and requests against me." (*Id.*). Warren then started laughing and stated, "You don't have a shank, if not, you need to get one cause you isn't going to lock-up, there's no cell available, so seems like to me you've got a problem."[7] (*Id.*). Captain Graham did not receive any request or information regarding the plaintiff's need to be locked up to protect him. (Doc. 16-3 at 1). The plaintiff sent a letter to defendant Estes the following day, in which he reported "someone was out to do harm to me." (Doc. 21 at 24). He stated he had

---

[7] Warren denies making these comments and states that she did not have the authority to move the plaintiff without the approval of a Captain or Warden. (Doc. 16-1 at 3). According to Warden Estes, had the plaintiff gone to Warren with such concerns, Warren should have reported the plaintiff's concerns up the chain of command, and such reports are "always reviewed." (Doc. 16-2 at 1-2).

asked defendant Warren to ask Carla Graham to speak to him because he wanted to be placed in lock-up "until I'm transferred or the threat no longer exist[s]." (*Id.*) (alteration added).

On April 23, 2016, while the plaintiff was in the TV room, he was stabbed from behind. (Doc. 1 at 9, doc. 16-5 at 2). As the plaintiff was running away, he was hit from behind in the face, breaking his nose.[8] (Doc. 1 at 9). The plaintiff was treated in the infirmary for multiple stab wounds and a broken nose. (Doc. 16-5 at 2-8, 11-17, 34-35). He was kept in the infirmary until April 25, 2016, when he was transferred to Kilby Correctional Facility. (Doc. 1 at 9; doc. 16-5 at 26-27).

The plaintiff asserts that defendant Warden Estes refused to take any action to prevent inmate on inmate assaults. (Doc. 1 at 9). He asserts that the defendants failed to protect him, in violation of the Eighth Amendment, and that defendant Warren retaliated against him, in violation of the First Amendment. (*Id.*, at 10-11). Defendant Estes disputes the plaintiff's claim that he failed to take any actions to prevent inmate violence, stating that he ensures correctional officers rove their cell blocks and that several different technologies are in place to detect contraband, such as metal detectors and cell phone detectors. (Doc. 16-2 at 2). Defendant Warren states she "had no knowledge that [the plaintiff] was in danger of being attacked by another inmate on April 23, 2016." (Doc. 16-1 at 3).

---

[8] In investigating this incident, Captain Graham learned from other inmates that the plaintiff was stabbed in retaliation for calling another inmate's girlfriend. (Doc. 16-3 at 1). However, no one was able to identify which inmate stabbed the plaintiff. (*Id.*, at 2).

**IV. Analysis**

**A.  Injunctive Relief**

The plaintiff seeks an order "enjoining the defendants from again engaging in the conduct complained of."  (Doc. 1 at 5).  However, the plaintiff was transferred to another prison two days after the incident that caused his injuries.  "The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief."  *McKinnon v. Talladega County*, 745 F.2d 1360, 1363 (11th Cir. 1984).  Because the plaintiff is no longer housed at St. Clair Correctional Facility, his claims for injunctive and declaratory relief are moot.  *See Johnson v. Warden*, 491 Fed.App'x 60, 62 n.1 (11th Cir. 2012) (citing *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986)); *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (injunctive relief claim becomes moot when prisoner transferred because after transfer, no case or controversy exists).

**B.  Eleventh Amendment Immunity - Official Capacity Claims**

Official capacity lawsuits are "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, [59] (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

Because the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities, any such official capacity claims must be dismissed.

**C. Deliberate Indifference to Prison Conditions**

The plaintiff asserts claims under the Eighth Amendment based on defendants Estes and Warren's failure to protect him from the inmate who attacked him.[9]  A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The Eighth Amendment "imposes a duty on prison officials" to "take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer*, 511 U.S. 832) (alterations omitted)).  *See also Murphy v. Turpin*, 159 Fed.App'x 945, 947 (11th Cir. 2005) ("Prison officials have a duty to protect prisoners from each other.").  Yet, while prison officials have this general duty to protect inmates from violence by other prisoners, they are not the guarantors of a prisoner's safety. *Morgan v. Toombs Co., GA.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (citing *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)).

To establish a violation of the Eighth Amendment, a plaintiff must allege a deprivation that is "objectively, 'sufficiently serious,'" such as a "substantial risk of serious harm," and that the defendants were deliberately indifferent to that risk. *See Farmer*, 511 U.S. at 834.  For the first element, the court uses an objective standard. *Caldwell*, 748 F.3d at 1099 (citing *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  The second element–deliberate indifference to the substantial risk of serious harm–has two components, one subjective and one objective.  To

[9] Although the plaintiff states he also sues under the Fourteenth Amendment for deliberate indifference, as a convicted prisoner, rather than a pre-trial detainee, the plaintiff's claims are properly analyzed under the Eighth Amendment. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996 ) (claims of pretrial detainees governed by the Fourteenth Amendment due process clause rather than Eighth Amendment cruel and unusual punishment clause, which applies to convicted prisoners).  The standards used are the same, regardless of whether the Eighth or the Fourteenth Amendment applies. *Jordan v. Doe*, 38 F.3d 1559, 1564-65 (11th Cir. 1994).

satisfy the subjective component, a plaintiff must produce evidence that the defendant "actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm." *Caldwell,* 748 F.3d at 1099 (citing *Rodriguez v. Sec'y for Dep't of Corr.,* 508 F.3d 611, 617 (11th Cir. 2007) (alterations in original).  The objective component requires a plaintiff to produce evidence that the defendant "disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner." *Id.* (citing *Rodriguez*, 508 F.3d at 617).

"[D]eliberate indifference describes a state of mind more blameworthy than negligence," and an ordinary lack of due care for a prisoner's interest or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 835.  "[M]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).  Rather, deliberate indifference must be shown by "conduct that is more than gross negligence." *Townsend v. Jefferson Cnty*., 601 F.3d 1152, 1158 (11th Cir. 2010).  The allegations must rise to the level of "a conscious or callous indifference to a prisoner's rights." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (citations omitted).  For liability, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

"[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.  *See also Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) ("Proof that the defendant should have perceived the risk but did not is insufficient.").  Moreover, the risk of injury "must be a strong likelihood, rather than a mere possibility before a

[prison official]'s failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533 (11th Cir. 1990) (internal citations omitted).

The plaintiff here contends that a friend told him to watch his back because the friend heard "someone was out to do harm to [the plaintiff]." (Doc. 21 at 24). Although the plaintiff previously asked to be moved because he feared gang activity, he does not allege that the April 23, 2016 attack on him was the product of any gang related activity. He does not identify his attacker at all. Rather, the plaintiff complains that the defendants failed to protect him from an unknown inmate who wanted to harm him for unknown reasons. Objectively, this fails to establish a substantial risk of serious harm to the plaintiff. *See e.g., Caldwell*, 748 F.3d at 1099.

Even if the plaintiff could establish an objectively serious risk of harm and that his injuries arose from that very harm, the plaintiff has failed to put forth evidence of "specific facts from which an inference could be drawn that a substantial risk of serious harm exist[ed]" and that "the prison official [] also [drew] that inference." *Carter*, 352 F.3d at 1349 (citation omitted). The plaintiff points only to a generalized threat he heard from a friend. *Compare Rodriguez*, 508 F.3d at 621 (where court found subjectively, facts that the plaintiff was a former gang member who renounced his membership, members of that gang had threatened to kill plaintiff in retaliation for his renunciation, and that the prison had many of the members of that gang, were sufficient to survive summary judgment) with *Chatham v. Adcock*, 334 Fed. App'x 281, 293-94 (11th Cir. 2009) (where despite the plaintiff's multiple complaints to prison officials, he never directly told them that his cellmate had threatened him and court found that plaintiff had shown only generalized awareness of risk by defendants) and *Carter*, 352 F.3d at 1349-50 ("[B]efore Defendants' awareness arises to a sufficient level of culpability, there must be much more than

mere awareness of [an inmate's] generally problematic nature . . . . [A] generalized awareness of risk . . . does not satisfy the subjective awareness requirement.")

### 1. Defendant Warden Estes

Taking as true the plaintiff's allegation that he sent a request to be moved to Warden Estes in February 2016, nothing in that request notified Warden Estes that the plaintiff would be in any particular danger in April 2016.  The plaintiff asserts only that "[o]n or about February 12, 2016, plaintiff wrote a complaint requesting Warden Estes III, to honor his word and have plaintiff moved to a more sociable surrounding. . . ."  (Doc. 1 at 6).  While the plaintiff mentioned in his request that he had witnessed inmate on inmate violence and that his lack of gang affiliation made him fear for his own health and safety (*id*., at 6-7), he did not identify any risk specific enough that Warden Estes should have subjectively known that the plaintiff faced a substantial risk of danger.  *See Brown*, 894 F.2d at 1537.  The plaintiff does not allege that he had been previously threatened, that any altercation was imminent, or any prior incidents which sufficed to put this defendant on notice that a threat of harm to the plaintiff existed.  *See Carter*, 352 F.3d at 1349-50.

Moreover, as to the plaintiff's assertion of fear for his safety due to his lack of gang-affiliation, cases which have found a generalized knowledge of potential harm sufficient to demonstrate deliberate indifference have required the plaintiff to belong to an identifiable group of prisoners who are frequently singled out for attacks by other prisoners.  *See Farmer*, 511 U.S. at 843-44.  The plaintiff here makes no such showing.  The plaintiff does not claim that the inmate who attacked him was a gang member, that the attack had any relation to gang activity, or any other basis on which Warden Estes should have been subjectively aware of a danger to the plaintiff. *See e.g., Moulds v. Bullard*, 345 Fed.App'x 387, 391 (11th Cir. 2009) (holding that to show a

"substantial risk" by an "environment of longstanding and pervasive attacks," the plaintiff must show all prisoners in his situation are subject to the same risk).

"The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Doe v. Georgia Dep't of Corr.*, 248 Fed.App'x 67, 71 (11th Cir. 2007) (quoting *Brown*, 894 F.2d at 1537 (citations and internal quotations omitted)).   Although the plaintiff sent a letter to defendant Estes on April 19, 2016, asserting he was in danger, that letter states only, "I was told by a friend to watch my back, because he got word someone was out to do harm to me." (Doc. 21 at 24).   As the Court found in *Carter*, "[t]his statement does not provide a sufficient basis to make the inferential leap that a substantial risk of serious harm to Plaintiff existed." *Id.*, 352 F.3d at 1350.   Defendant Warden Estes' motion for summary judgment is therefore due to be granted.

### 2.  Defendant Warren

The plaintiff asserts that he went to defendant Warren on April 18, 2016, and specifically requested to be placed in lock-up to keep him safe. (Doc. 1 at 8).   According to the plaintiff, defendant Warren laughed at him and told him to get a "shank." (*Id.*).   According to defendant Warren, she never said this and asserts that she did not know the plaintiff was in danger of being attacked by another inmate on April 23, 2016. (Doc. 16-1 at 3).   As with Warden Estes, the plaintiff has failed to show a "particularized threat or fear felt" by the inmate sufficiently communicated to defendant Warren such that she should have been subjectively aware of a substantial risk of harm to the plaintiff. *Carter*, 352 F.3d at 1350.   Not every instance of inmate on inmate violence "translates into a constitutional liability for prison officials responsible for the victim's safety," *Farmer*, 511 U.S. at 834, rather, a violation occurs when a prison official is "aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists---and

12

the prison official must also 'draw that inference.'" *Carter*, 352 F.3d at 1349 (citing *Farmer*, 511 U.S. at 837).

While Warden Estes states that every correctional officer who was confronted with requests for living quarter reassignments knew to take such requests up the chain of command, defendant Warren does not assert she did so.   Rather, she states only, "I would have reminded him that I did not have the authority to move him without him first obtaining the approval of the Captain or a Warden." (Doc. 16-1 at 3).   Defendant Warren does not assert she sought such approval, and she does not assert she warned other officers that the plaintiff might be in danger.   However, she concludes "I was not and could not have been deliberately indifferent to a known substantial risk of harm to the Plaintiff."   (*Id*.).   Although defendant Warren did not follow prison protocol regarding the plaintiff's request to be moved, violations of prison policy only provide a possible basis for a claim of negligence, and such policy violations do not provide a sufficient basis for liability under § 1983.   *Davis v. Scherer*, 468 U.S. 183, 194 (1984) (recognizing that allegation of violation of statutory or administrative provision did not provide the basis for a claim of violation of a constitutional right); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (failure of prison officials to follow their own rules does not establish a constitutional violation).

The plaintiff's allegations against this defendant do not rise to a level which could support a finding that defendant Warren was subjectively aware of a serious risk of harm to the plaintiff. Although the plaintiff asked to be moved, he did not identify any particularized risk of harm from any identifiable source.   In other words, the plaintiff's allegations do not reflect a strong likelihood, rather than a mere possibility, of harm.   *See Doe*, 248 Fed.App'x at 71.

### D. Qualified Immunity

Qualified immunity offers complete protection for individual government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The clearly established law must provide a defendant with "fair warning" that his or her conduct deprived the plaintiff of a constitutional right.  *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002).  Once a public official establishes that he was acting within the scope of his discretionary authority, the plaintiff must demonstrate that the defendant violated a constitutional right and that the right was clearly established at the time.  *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  "In determining whether a right is clearly established, the relevant, dispositive inquiry is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Caldwell*, 748 F.3d at 1102 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1359 (11th Cir. 2003)).

Here, the defendants were acting within their discretionary authority at the time they failed to take any action to protect the plaintiff.  Even assuming that the plaintiff had alleged facts which could support a violation of his constitutional rights, no binding precedent puts these defendants on notice that their conduct was unlawful.  "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate.  *Reichle v. Howards*, -- U.S. --, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and citations omitted) (alteration in original).  The Eleventh Circuit has explained that

> [a] right may be clearly established for qualified immunity purposes in one of three
> ways: (1) case law with indistinguishable facts clearly establishing the

14

constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013).

Furthermore, "[t]he inquiry whether a federal right is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks and citation omitted). The court should look "only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted).

Clearly established law is law that is "sufficiently clear that a reasonable official would understand that what he is doing violated that right." *Hope*, 536 U.S. at 739. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citations omitted). While multiple cases in this Circuit have put prison officials on notice that they have a duty to protect inmates from violence at the hands of other inmates, each of those cases has required that the prison officials in question have more than a generalized idea that the plaintiff could be subjected to violence. In contrast, here the plaintiff identified a generalized threat of violence. He did not identify any particular inmate as threatening him and did not allege that his lack of gang-affiliation contributed to the attack in any way. The plaintiff demonstrates no connection between his requests to be moved in February 2016 and the attack he suffered in April 2016. While the plaintiff did notify prison officials that he feared for his safety in April 2016, he stated only that a friend told him to watch his back "because he got

word someone was out to do harm to me." (Doc. 21 at 24).  The undersigned can find no binding precedent in this Circuit which would have put the defendants on notice that they had a duty to protect the plaintiff from an unknown, non-specific, generalized threat.

### E.  Respondeat Superior

The plaintiff also brings a claim against defendant Estes in his role as a supervisor.  (Doc. 20 at 3).  However, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Rather, to establish supervisory liability under § 1983, a plaintiff must allege either that the supervisor personally participated in the alleged unconstitutional conduct or that a causal connection exists between the actions of the supervising official and the alleged constitutional deprivation. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citing *Cottone*, 326 F.3d at 1360).  As the plaintiff does not allege that Warden Estes personally participated in any unconstitutional conduct, the undersigned examines whether a causal connection between his actions and a deprivation of the plaintiff's constitutional rights exists.

The required causal connection may be established when (1) a history of widespread abuse puts the supervisor on notice of the need to correct the alleged deprivation and he fails to do so; (2) when the supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008).  For supervisory liability to attach, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley*

16

*v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).  The plaintiff's allegations fail to describe any

"widespread abuse" such that Warden Estes was put on notice that a specific danger to the plaintiff

existed.  Nor does the plaintiff claim that Warden Estes directed his subordinates to act unlawfully

or knew that they would do so and failed to prevent it.  Similarly, the plaintiff fails to identify any

custom or policy of the defendant which resulted in deliberate indifference to the plaintiff's rights.

He makes no allegation that could support a claim against Warden Estes in his role as a supervisor.

### F.  Retaliation

"The First Amendment forbids prison officials from retaliating against prisoners for

exercising the right of free speech."  *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  An

inmate raises a First Amendment claim of retaliation by showing that a prison official disciplined

him for filing a grievance or lawsuit concerning the conditions of his imprisonment.  *Wildberger*

*v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989).  To prevail on a claim for retaliation under the

First Amendment, a prisoner must establish that "(1) he engaged in constitutionally protected

conduct; (2) the defendant's retaliatory act adversely affected the protected conduct; and (3) there

is a causal connection between the retaliatory act and the adverse effect on the conduct."  *Smith v.*

*Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013).  Such a causal connection may be

shown by a chronology of events that create a plausible inference of retaliation.  *Cain v. Lane*, 857

F.2d 1139, 1143 n. 6 (7th Cir. 1988).  Should the plaintiff satisfy this burden, demonstrating that

his protected conduct was a motivating factor behind the harm, the burden shifts to the defendant

to demonstrate that he would have taken the same action in absence of the protected activity.

*Smith*, 713 F.3d at 1063.

Thus, to prevail on a claim for retaliation, the plaintiff must show that defendant Warren

retaliated against him for his prior protected activity, specifically his grievances and other

complaints about her. *See Woodyard v. Alabama Dep't of Corr.*, 606 Fed.App'x 572, 574 (11th Cir. 2015) (citing *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006)) (retaliating against a prisoner by punishing him for filing a grievance concerning the conditions of his confinement violates the First Amendment)).  The plaintiff asserts that because he had previously filed lawsuits and grievances about Warren, defendant Warren charged him with two false disciplinary reports. (Doc. 20 at 4).  To establish causation, the plaintiff must demonstrate evidence which supports a finding that Warren was subjectively motivated to discipline him because of his prior complaints about Warren's treatment of him.  *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999)).  "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit." *Jemison v. Wise*, 386 Fed.App'x 961, 965 (11th Cir. 2010) (citing *Mosley*, 532 F.3d at 1278).

However, the plaintiff fails to explain how the disciplinary reports, of which he was found not guilty, relate in any way to his claim that defendant Warren knew he was in danger from other inmates and failed to protect him.[10]  Even assuming that the disciplinary actions brought by defendant Warren were in retaliation for his previous grievances against her, the plaintiff has alleged no injury from the accusations or the determination that the disciplinary reports should be nolle processed.

Moreover, the plaintiff cannot satisfy second element of such a claim, specifically whether the discipline the prisoner received "would likely deter a person of ordinary firmness from the

---

[10]  The plaintiff does not allege that the failure place him in lock-up in late April 2016 was the result of retaliation.  Given the uncontradicted evidence that defendant Warren could not place the plaintiff in lock-up on her own, even if the plaintiff had made such a claim, any such claim would fail.

exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). *See also Pittman v. Tucker*, 213 Fed. App'x 867, 870 (11th Cir. 2007) (holding that "a plaintiff need not show that his own exercise of First Amendment rights have been chilled, but instead a plaintiff can establish an injury if he can show that the retaliatory acts are sufficiently adverse that a jury could find that the acts would chill a person of ordinary firmness from exercising his First Amendment rights."). Here, the plaintiff suffered no discipline. The claims were nolle processed. The proper inquiry is not whether the plaintiff was deterred, but rather whether an ordinary prisoner would be deterred. *Bennett*, 423 F.3d at 1254. Because the plaintiff suffered no loss of privileges or other punishment based on defendant Warren's accusations against him, a reasonable trier of fact could not find that any reasonable prisoner would be deterred under similar circumstances. Because the plaintiff was not actually disciplined based on defendant Warren's allegations against him, suffered no injury from her allegations, and failed to relate the disciplinary reports from March 2016 to his stabbing in late April 2016, this claim is due to be dismissed.

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** that the motion for summary judgment (doc. 16) be granted, and this action be **DISMISSED WITH PREJUDICE.**

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection. Failure to object to factual findings will bar later review of those findings, except for plain error. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986);

*Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).   Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.   An objecting party must serve a copy of its objections on each other party to this action.

Upon receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge.   The district judge must conduct a hearing if required by law.   Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.   Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.   The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.   A party may only appeal from a final judgment entered by a district judge.

DONE this 1st day of May, 2017.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE